# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **DWIGHT WHEELER,** | § § § | |
| Plaintiff | § § | Case No. 3:19-cv-457 |
| vs. | § § | |
| **RINGADOC, INC., PRACTICE FUSION, INC. and ALLSCRIPTS HEALTHCARE SOLUTIONS, INC.** | § § § § § § | JURY DEMANDED |
| Defendants | § § | |

_____

**PLAINTIFF DWIGHT WHEELER'S COMPLAINT AND DEMAND FOR JURY TRIAL**
_____

1. Plaintiff Dwight Wheeler ("**Plaintiff**") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("**TCPA**"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes –

prompted Congress to pass the TCPA." *Id.* at 744. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them. Thus, and as applicable here, Section 227(b)(1)(A)(iii) of the TCPA specifically prohibits the making of "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]"

3. The TCPA prohibits calls to a cell phone made with an auto dialer or with a prerecorded voice unless prior express consent is given. Plaintiff never so consented.

4. The TCPA also prohibits calls made to telephone numbers on the national Do Not Call Registry (the "**DNC Registry**").

5. Ringadoc, Inc. ("**Ringadoc**") called Plaintiff's cell phone using an auto dialer and/or a pre-recorded voice. Because Plaintiff had not given his consent to receive calls on his cell phone from Ringadoc, these calls violated the TCPA.

6. This is the exact scenario Congress attempted to prevent in enacting the TCPA. Plaintiff now seeks this Court's intervention and help in attempting to prohibit this unlawful conduct.

## Parties

7. Plaintiff is a resident of the State of Texas and this Northern District for Texas. Plaintiff received the calls made subject of this suit in this District.

8. Plaintiff is the "called party" with respect to the calls placed to his cellular telephone number 702-XXX-7387.

9. Ringadoc, Inc. is a Delaware corporation with its principal place of business located at 650 Townsend Street, San Francisco, California 94103. Ringadoc may be served with process by serving its registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

10. Defendant Practice Fusion, Inc. ("**Practice Fusion**") purchased Ringadoc and was its owner at the time of the calls. Practice Fusion encouraged and approved of Ringadoc's practice of making illegal telephone solicitations and of Ringadoc's calls to Plaintiff. Thus, Practice Fusion is liable for its liabilities. Practice Fusion may be served with process by serving its registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

11. Defendant Allscripts Healthcare Solutions, Inc. ("**Allscripts**") subsequently purchased Practice Fusion and is liable for its liabilities. Allscripts may be served with process by serving its registered agent for service of process,

The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

12. Ringadoc, Practice Fusion and Allscripts is each a "**Defendant**" and collectively "**Defendants**".

## Jurisdiction & Venue

13. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

14. Supplemental jurisdiction exits pursuant to 28 U.S.C. § 1367.

15. Venue is proper pursuant to 28 U.S.C. § 1391 (b) because the Plaintiff is a resident of this District and Defendants have sufficient contacts in this State and District to subject them to personal jurisdiction. Ringadoc made calls to a resident of this District and the calls were received in this District.

## Article III Standing

16. Plaintiff has Article III standing for his claim under the TCPA. *Spokeo, Inc., v. Thomas Robins*, 136 S. Ct. 1540 (2016). *See also*, *Jamison v. Esurance Ins. Servs., Inc.,* No. 3:15-CV-2484-B, 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016). Plaintiff was harmed by Ringadoc's actions of calling his cell phone without consent and with an ATDS and/or a pre-recorded voice in the following manners:

    a. Plaintiff's privacy was invaded by Ringadoc;

    b. Plaintiff was harassed and abused by Ringadoc's telephone calls;

    c. Ringadoc's calls were a nuisance to Plaintiff;

    d. Ringadoc's calls upset Plaintiff emotionally;

    e. Plaintiff's cell phone was unavailable for other use while processing the illegal calls from Defendant;

    f. Ringadoc illegally seized Plaintiff's cellular telephone line while they made illegal calls to Plaintiff's cellular telephone;

    g. Plaintiff's cellular telephone line was occupied by multiple unauthorized calls from Ringadoc;

    h. Ringadoc's seizure of Plaintiff's cellular telephone line was intrusive; and

    i. Plaintiff was inconvenienced by, among other things, hearing his cell phone ring, having to check the calling party and having to delete messages left by Ringadoc.

**The Telephone Consumer Protection Act**

17. Advances in telecommunications technology have provided benefits to American society. But those benefits are not cost-free; new technologies bring with them new ways to intrude upon individual privacy and waste the time and money of consumers. The 1980s and 90s brought an explosion of abuses of telephone and facsimile technology, including the use of auto-dialers to clog telephone lines with unwanted calls, "robocalls" with unsolicited or unwanted,

prerecorded messages, and "junk faxes" that consume the recipients' paper and ink and interfere with the transmission of legitimate messages.

18. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

19. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *See also Mims*, 132 S. Ct. at 745.

20. The TCPA regulates, among other things, the use of automated telephone equipment, or "auto-dialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of auto-dialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

### The TCPA prohibits telemarketing calls to numbers listed on the Do Not Call Registry, unless the caller has the recipient's express consent

21. The national Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the DNC Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

22. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential subscribers to the DNC Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

23. The Federal Trade Commission (FTC) amended the Telemarketing Sales Rule (TSR) to give consumers a choice about whether they want to receive most telemarketing calls. As of October 1, 2003, it became illegal for most telemarketers or sellers to call a number listed on the DNC Registry. The DNC Registry applies to any plan, program, or campaign to sell goods or services through interstate phone calls. This includes telemarketers who solicit consumers, often on behalf of third-party sellers. It also includes sellers who provide, offer to provide, or arrange to provide goods or services to consumers in exchange for payment.

24. The DNC Registry does not limit calls by political organizations, charities, or telephone surveyors. A telemarketer or seller may call a consumer with whom it has an established business relationship for up to 18 months after the consumer's last purchase, delivery, or payment—even if the consumer's number is on the Registry. In addition, a company may call a consumer for up to three months after the consumer makes an inquiry or submits an application to the company. And if a consumer has given a company express written permission, the company may call even if the consumer's number is on the DNC Registry. However, if a consumer asks a company not to call, the company may not call, even if there is an established business relationship. Indeed, a company may not call a consumer—regardless of whether the consumer's number is on the DNC Registry—if the consumer has asked to be put on the company's own do not call list.

25. A person whose number is on the DNC Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. § 227(c)(5).

26. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

**Factual Allegations**

27. Beginning on or about March 14, 2015, Plaintiff began receiving robocalls to his cellular phone number from Ringadoc.

28. The calls were sales calls and an attempt to have Plaintiff register for Ringadoc's service.

29. Plaintiff documented at least 98 robocalls from Ringadoc after March 14, 2015. Plaintiff told Ringadoc to stop calling his cellular telephone number eight times.

30. On April 13, 2015, Plaintiff wrote a letter to Ringadoc concerning the problem.

31. The calls did not stop.

32. At no time did Plaintiff provide Ringadoc with consent to place any telephone calls, including any calls made through an ATDS, to his cellular telephone number.

33. At all times relevant herein, Ringadoc called Plaintiff's cellular telephone using an artificial or prerecorded voice and/or an ATDS.

34. Within the four years prior to the filing to this lawsuit, Ringadoc has been placing telephone calls to Plaintiff's cellular telephone number, 702-XXX-7387.

35. Plaintiff is the subscriber for and regular user of cell phone number 702-XXX-7387. Plaintiff is charged for calls made to cell phone number 702-XXX-7387 via a monthly charge.

36. Plaintiff's telephone number 702-XXX-7387 is registered on the national Do Not Call Registry and was so listed for at least 60 days prior to receiving the first call from Ringadoc.

37. At all material times Plaintiff's number 702-XXX-7387 was used for residential purposes.

38. Ringadoc placed automated calls to Plaintiff' cell phones using an automatic telephone dialing system ("**ATDS**") "which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C. § 227(a)(1)."

39. When the calls connected, there was an audible click from the receiver. After a significant pause, a message was left by Ringadoc by a prerecorded voice. As such, the calls at issue were made using an automatic telephone dialing system, equipment having the capacity to dial Plaintiff' numbers without human intervention.

40. The facts in the preceding paragraph indicate calls were placed through an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1).

41. On many of the calls Ringadoc left a message consisting of a prerecorded voice. Plaintiff listened to the message and recognized that it was not a live person leaving the message but an automated voice recording.

42. The facts in the preceding paragraph indicate calls were placed using an "artificial or prerecorded voice."

43. Plaintiff has not provided Ringadoc with his cell phone number or permission to call his cell phone number.

44. None of the calls at issue were placed by Ringadoc to Plaintiff's cell phone were for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227(b)(1)(A).

## Legal Claims

## Count One Against Ringadoc:

### Violation of the TCPA's provisions prohibiting auto-dialed and prerecorded message calls to cell phones

45. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

46. Ringadoc repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff' prior express consent in violation of the federal law, including 47 U.S.C. §227(b)(1)(A)(iii). Thus, Ringadoc violated

the TCPA by initiating a telephone call using an automated dialing system or prerecorded voice to Plaintiff's telephone number assigned to a cellular telephone service.

47.  In making the calls Ringadoc violated Plaintiff's right to privacy and Plaintiff suffered actual damages as a result.

48.  Plaintiff is informed, believes and alleges that Ringadoc's violations of the TCPA described above were done willfully and knowingly.

49.  The willful and knowing nature of Ringadoc's conduct is exhibited in part by the following facts:

   a. Ringadoc is a large corporation with access to legal advice through its own regulatory department and outside consumer-law counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

   b. Ringadoc knew or had reason to know that its conduct was inconsistent with published FCC guidance interpreting the TCPA and the plain language of the statute;

   c. Ringadoc knew that Plaintiff had not consented to calls to his cell phone as Ringadoc did not receive Plaintiff's cell phone numbers from Plaintiff;

    d.  Upon information and belief Ringadoc knew that permission was required before Ringadoc could call Plaintiff's cell phone using an auto-dialer or a prerecorded voice;

    e.  Plaintiff told Ringadoc to stop calling his phone number; and

    f.  Upon information and belief Ringadoc was aware of the requirements of the TCPA, but choose to not to comply with those requirements.

50.    Plaintiff is entitled to actual damages and/or damages of $1,500 per violation pursuant to 47 U.S.C. §227(b)(3) because the violations were willful and knowing violations of the TCPA.

## Count Two:
## Violation of the TCPA's Do Not Call provisions

51. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

52.    47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

53.    The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a]

residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." See 47 C.F.R. § 64.1200(c).

54. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

55. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(a) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(b) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(c) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(d) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(e) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(f) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

56. Ringadoc violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to Plaintiff while his number was on the National Do Not Call Registry and had been for more than 60 days. Plaintiff requested to not receive calls from Ringadoc, as set forth in 47 C.F.R. § 64.1200(d)(3).

57. Ringadoc made more than one unsolicited telephone call to Plaintiff within a 12-month period without their prior express consent to place such calls. Plaintiff never provided any form of consent to receive telephone calls from Ringadoc, and/or Ringadoc does not have a record of consent to place telemarketing calls to him.

58. Ringadoc violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

59. Ringadoc violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone call in a 12-month period made by or on behalf of Ringadoc

in violation of 47 C.F.R. § 64.1200, as described above. As a result of Ringadoc's conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

60. To the extent Ringadoc's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

61. The Ringadoc's violations were knowing/willful.

62. Plaintiff is entitled to actual damages and/or damages of $1,500 per violation pursuant to 47 U.S.C. § 227(c)(5) because the violations were willful and knowing violations of the TCPA.

## Count Three

## Violation of Tex. Bus. & Com. Code, Chapter 305

63. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

64. Plaintiff is a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

65. Ringadoc is a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

66. Pursuant to Section 305-053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both an injunction and damages.

67. Plaintiff is entitled to a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305.

68. Pursuant to Section 305-053(b) of the Texas Business & Commerce Code, Plaintiff is entitled to the greater of $500.00 for each violation or Plaintiff's actual damages for each call negligently made by Ringadoc.

69. Pursuant to Section 305-053(c) of the Texas Business & Commerce Code, Plaintiff is entitled to not more than the greater of $1,500.00 for each violation or three times Plaintiff's actual damages for each violation by Ringadoc that the Court finds was made knowingly or intentionally.

**Relief Sought**

70. Plaintiff requests the following relief:

a. That after due notice and hearing, a permanent injunction be issued, restraining and enjoining Ringadoc, Ringadoc's successors, assignees, officers, agents, servants, employees and attorneys and any other person in active concert or participation with Ringadoc from communicating with Plaintiff in a

manner that violates 47 U.S.C. § 227, and/or Texas Business & Commerce Code Chapter 305;

  b. Defendants be found liable, jointly and severally, under the TCPA and Texas Business & Commerce Code, Chapter 305 and Plaintiff be awarded statutory damages of $500 per call for each negligent violation of the TCPA and/or Texas Business & Commerce Code, Chapter 305, and $1,500 per call for each willful/knowing violation of the TCPA and/or Texas Business & Commerce Code, Chapter 305; and

  c. Plaintiff be granted other relief as is just and equitable under the circumstances.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

Respectfully submitted:

By: ___*/s/ Chris R. Miltenberger*___
      Chris R. Miltenberger
      Texas State Bar Number 14171200

The Law Office of Chris R. Miltenberger, PLLC
 1360 N. White Chapel, Suite 200
Southlake, Texas 76092
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

Attorney for Plaintiff